08 CV 03312

JUDGE JONES

RECEIVED
APR 0 2 2008
U.S.D.C. S.D.N.Y.
CASHIERS

Michael S. Cole (MSC 0636)
Cascone, Cole & Collyer
711 Third Avenue – 15th Floor
New York, NY 10017
Tel: (212) 599-4747
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

FIRST SERVICE FINANCIAL INC,

        Plaintiff,

-against-

THE CITY LIGHTS AT QUEENS LANDING INC.,

        Defendant.

---

**COMPLAINT**

Case No. _____

As and for its Complaint against the Defendant The City Lights at Queens Landing Inc., the Plaintiff First Service Financial Inc., by its attorneys Cascone, Cole & Collyer, respectfully alleges:

*The Parties*

1.      The Plaintiff First Service Financial Inc., hereinafter "FFI", is in the financial services and mortgage brokerage business, incorporated in the State of Delaware and whose offices and principal place of business is located at 901 South Trooper Road, Norristown, Pennsylvania.

2.      The defendant City Lights at Queens Landing Inc., hereinafter "City Lights", is a New York Cooperative Housing Corporation whose incorporated building is located at 4-74 48th Avenue, Long Island City, Queens, New York. The City Lights Cooperative is a 521 unit residential building.

*Jurisdiction*

3.      Jurisdiction is premised upon 28 U.S.C. Section 1332(a) (1) "diversity of citizenship" in that the sole plaintiff FFI is a citizen and domiciliary of the State of Pennsylvania.  The sole defendant City Lights is a citizen and domiciliary of the State of New York.  To wit, plaintiff is

incorporated in the State of Delaware having its principal place of business in the State of Pennsylvania.  The sole defendant City Lights is a New York State Cooperative Housing Corporation incorporating the building 4-74 48th Avenue, located in Long Island City, Queens, New York: The parties plaintiff and defendant are thus in complete diversity.

4.     The *amount in controversy* is $400,000 and therefore the action is in further compliance with the jurisdictional prescription pursuant to 28 U.S.C. Section 1332 (a).

*Statement of Claim*

5.     The plaintiff FFI, a mortgage broker as aforestated, was referred to the defendant cooperative by the defendant coop's building management company *Cooper Square Realty Inc*. with respect to the refinancing of the defendant coop's underlying building mortgage.

6. The building management company *Cooper Square Realty Inc.*, and the plaintiff FFI, have a common publicly held corporate parent but are otherwise legally and physically separate. The plaintiff FFI having entered into an exclusive mortgage brokerage letter agreement with the defendant Coop dated November 1, 2006, which is the subject of this action. A copy of the letter agreement is annexed hereto as **Exhibit A**.

7. The brokerage letter agreement provided for plaintiff FFI to earn a mortgage brokerage commission of one half per cent of Board approved new financing upon the occurrence of either of two events: (i) where plaintiff FFI procures an approved loan commitment for the defendant Coop and also obtains a rate lock agreement (ii) where the defendant Coop refers to plaintiff FFI any other loan application it intends to submit to any other lender during the exclusive period of the brokerage agreement, where plaintiff assists in negotiating the re-financing and the rate lock agreement. The exclusive term of the brokerage letter agreement ran for six months from the date of signing. That is, between November 1, 2006 and May 1, 2007.

8. On or about November 29, 2006, during the exclusive term of the exclusive brokerage letter agreement, the defendant Cooperative referred to the plaintiff FFI a proposed loan it intended to submit to the lender *Chartermac* later known as *Centerline* in the amount of $80,000,000. (Eighty Million Dollars.) The defendant Coop identified plaintiff FFI to Chartermac as its broker with authorization to negotiate the terms of the refinancing per the exclusive written letter agreement.

9. From the date of Chartermac's introduction in November 2006 continuously through February 29, 2008, <u>when the loan closed with a rate lock agreement in place, negotiated with plaintiff's assistance:</u> the plaintiff worked ceaselessly on the major issues and obstacles to the closing of the Chartermac/Centerline loan, among which are the following: (i) review, analysis and consultation, regarding the terms and conditions of the Chartermac/Centerline proposed financing (ii) analyze initial and final loan application (iii) negotiate forward rate lock agreement (iv) analyze proposal to convert building to residential condominium (v) preparation of memoranda and studies regarding condo conversion, obtaining end-loans for unit owners (vi) solicitation of alternate lenders (vii) analysis of alternate

lender commitment offers (viii) marshalling building rent roll for lender (ix) discuss/coordinate and obtain financial statements for lender (x) discuss/coordinate and obtain updated building operating statements for lender (xi) assist in coordinating appraisal (xii) discuss/coordinate and obtain engineering report for lender (xiii) discuss/coordinate and obtain projected budget documents (xiv) discuss/ coordinate and obtain proof of insurance for lender (xv) address the Temporary Certificate of Occupancy/Certificate of Occupancy issue (xvi) assist with mortgage satisfaction/mortgage assignment issue (xvii) address proof of Local Law 11 compliance (xviii) address DEP violation.

10. Apropos the foregoing plaintiff was required to generate hundreds of e-mails, dozens of telephone calls to the Coop Board, building management, building appraiser, myriad others. Plaintiff attended dozens of meetings by and between the parties, created charts and studies for the Coop Board to consider as detailed above: culminating in the close of the loan with a rate lock agreement in place as aforesaid.

11.     On February 29th, 2008 when the loan to the defendant Coop closed from Chartermac/Centerline in the amount of $80,000,000 the plaintiff had then outstanding its invoice for $400,000 (equal to the one half per cent of the financed amount as agreed).  The defendant refused to pay, claiming in an email from the Coop Board president that the loan was not "produced" by plaintiff, citing further the defendant Coop's alleged problems with its former management company, the plaintiff's affiliate company *Cooper Square Realty Inc*. as grounds for an offset defense. See the email from defendant annexed hereto as **Exhibit B**.

12.     The alleged offset claim lacks bona fides: though the management company *Cooper Square Realty Inc*. is necessarily disclosed as an affiliated company in the exclusive letter agreement, it is completely and legally separate from the plaintiff.  The only commonality is a publicly held corporate parent aforementioned: Cooper Square is separately incorporated. It is in a different business from plaintiff. Its offices are located in a different state. (Plaintiff FFI P.A., *Cooper Square Realty Inc*. N.Y.)  Each has a totally separate relationship with the defendant rendering totally separate services.  The exclusive letter agreement gives Cooper Square no rights or

obligations.  Nor can any right be claimed by Cooper Square through FFI.  It was Cooper Square who referred the plaintiff.  The plaintiff did not refer Cooper Square.  The reasons proffered by defendant for offset amounts to no more than posture.  There is no basis in law or in equity to deny payment of the commission in full rightfully due plaintiff by signed agreement.

13.     The failure to pay the commission due plaintiff under the exclusive brokerage letter agreement is in plain breach of contract and operates as an unjust enrichment to defendant.  And whereas the parties lie in complete diversity and the amount in controversy is in excess of $75,000, this action is properly brought before this Court.

*The Facts of the Case*

14.     On or about October 12, 2005 the defendant Coop's building management company *Cooper Square Realty Inc.* referred the plaintiff FFI as aforementioned to the defendant City Lights Coop as a prospective

mortgage broker with regard to refinancing the coop's underlying building mortgage.

15. At the time plaintiff was first referred, the defendant coop was engaged in negotiation with *GMAC Commercial Mortgage Corporation* as a mortgage broker and possible short-term lender. But whereas GMAC was found to be unsatisfactory, the defendant coop did then enter into the exclusive mortgage brokerage letter agreement with plaintiff FFI as above mentioned dated November 1 2006. (*See*, Exhibit A.)

16. The said exclusive brokerage letter agreement provided for compensation to plaintiff in the amount of ½ percent of the amount financed. The plaintiff was entitled to earn this commission upon the occurrence of one of two events: either where plaintiff procures the loan and a rate lock agreement for defendant or where the defendant refers to plaintiff for its assistance any other loan application the defendant Coop intends to submit during the exclusive six month period, plaintiff to help negotiate and close such loan. The exclusive term ran six months from the date of signing from November 1, 2006 to May 1, 2007.

17.    At or about November 29, 2006, <u>during the exclusive term of the brokerage letter agreement</u>, the defendant Coop referred to the plaintiff FFI for its assistance a proposed loan commitment of $80,000,000 from the lender *Chatermac* which later became known as *Centerline*: <u>Plaintiff FFI was identified to Chartermac by the defendant Coop as its broker</u> with authorization to negotiate the terms of the refinancing pursuant to the terms of the written brokerage letter agreement.

18.    Beginning from the date of referral of the Chartermac/Centerline loan in November 2006 and until the date the loan closed in February 2008, the plaintiff FFI did continuously and successfully assist in negotiating and ultimately facilitating the close of the loan and rate lock agreement.  To wit, the defendant Coop closed on the $80,000,000 loan with the rate lock agreement in place on February 29, 2008.

19.    Notwithstanding the foregoing, the defendant has refused to pay the agreed commission due plaintiff under written agreement in the amount of $400,000 representing ½ percent of the financed amount ($80,000,000) as

agreed.  The defendant claiming the loan was "not produced" by plaintiff FFI, citing alleged but unrelated claims against the coop defendant's former building management company *Cooper Square Realty Inc*. as an offset defense to the commission due the plaintiff FFI.  *See*, **Exhibit B.**

### AS AND FOR A FIRST CAUSE OF ACTION

20.   The plaintiff repeats and re-alleges paragraphs 1 through 19 hereof as if fully set forth herein.

21.   The defendant City Lights' refusal to pay the plaintiff FFI its mortgage brokerage commission of $400,000 pursuant to the exclusive letter agreement aforesaid is without legal or equitable basis or defense.

22.   The defendant therefore is in breach of contract.

23.     The plaintiff has been damaged as a direct consequence of the defendant's breach in the amount of $400,000. (Four Hundred Thousand) Dollars.

## AS AND FOR A SECOND CAUSE OF ACTION

24.     The plaintiff repeats and re-alleges paragraphs 1 through 19 as if fully set forth herein.

25.     Whereas the plaintiff performed services to the defendant in good faith beginning November 1, 2006 continuing without hiatus until February 29, 2008 including but not limited to the following: (i) review, analysis and consultation, regarding the terms and conditions of the Chartermac/Centerline proposed financing (ii) analyze initial and final loan application (iii) negotiate forward rate lock agreement (iv) analyze proposal to convert building to residential condominium (v) preparation of memoranda and studies regarding condo conversion, obtaining end-loans for unit owners (vi) solicitation of alternate lenders (vii) analysis of alternate

lender commitment offers (viii) marshalling building rent roll for lender (ix) discuss/coordinate and obtain financial statements for lender (x) discuss/coordinate and obtain updated building operating statements for lender (xi) assist in coordinating appraisal (xii) discuss/coordinate and obtain engineering report for lender (xiii) discuss/coordinate and obtain projected budget documents (xiv) discuss/ coordinate and obtain proof of insurance for lender (xv) address the Temporary Certificate of Occupancy/Certificate of Occupancy issue (xvi) assist with mortgage satisfaction/mortgage assignment issue (xvii) address proof of Local Law 11 compliance (xviii) address DEP violation.

26. The defendant knowingly and willingly accepted the services aforesaid.

27. The plaintiff had the reasonable expectation of compensation for the services rendered to defendant aforementioned.

28. The reasonable value of the services aforesaid provided to the defendant was in the amount of $563,410 (Five Hundred Sixty Three

Thousand Four Hundred Ten Dollars), for which defendant is alternatively liable to plaintiff.

**WHEREFORE**, the plaintiff demands judgment against the defendant as follows:

1. On the *First Cause of Action*, for breach of contract, judgment in the amount of $400,000 (Four Hundred Thousand Dollars).

2. On the *Second Cause of Action* for unjust enrichment/quantum meruit, judgment in the amount of $563,410 (Five Hundred Sixty Three Thousand Four Hundred Ten Dollars).

3. Such other and further relief as may be deemed just and proper.

4. Costs, interest, and disbursements as permitted by law.

Dated: April 2, 2008

                                    Yours, etc.

                                    CASCONE, COLE & COLLYER
Attorneys for Plaintiff First Service Financial Inc.
By: Michael S. Cole, Esq.
    (MSC 0636)
711 Third Avenue – 15th Floor
New York, NY 10017
Tel: (212) 599-4747