UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FIRST SERVICE FINANCIAL INC,

                    Plaintiff,

          -against-


THE CITY LIGHTS AT QUEENS LANDING
INC.,

                    Defendant.

Case No. 08-cv-03312
(BSJ) (FM)


**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS COMPLAINT
<u>PURSUANT TO FRCP RULE 12(b)(6)</u>**


CASCONE, COLE & COLLYER
Attorneys for Plaintiff
By: Michael S. Cole, Esq. (MC 0636)
711 Third Avenue – 15th Floor
New York, New York  10017
Tel:  (212) 599-4747

# TABLE OF CONTENTS

*Page*

**Table of Cited Authorities** ........................................ ............. *ii*

**Table of Federal Cases** ............................................ ............. *ii*

**Table of State Cases** ............................................... ............. *ii*

**Table of Statutes** .................................................. ............. *iii*

I.  STATEMENT IN OPPOSITION TO MOTION TO
    DISMISS COMPLAINT ............................................ ............. 1

    A.  *Presumed Pled Facts/Plain Language of the*
    *Agreement: Contra to the premise of Defendant's*
    *Motion* ................................................... ............. 1

    B.  *"Procuring Cause" and "Produce a Loan":*
    *Legally Distinct Terms Evidencing Two Alternate*
    *Bases for a Commission* ................................... ............. 5

    C.  *Dismissal Demanded as to Quantum Meruit:*
    *Defendant Can't Have Its Cake and Eat it Too* ..... ............. 9

    D.  *Distinguishing Other Precedent Cited by Defendant* ............. 11

II.  THE REPRODUCED RELEVANT PLED
     ALLEGATIONS OF THE COMPLAINT
     PARAGRAPHS 7 THROUGH 10 AND 19 ................... ............. 12

III. SUPPORTING THIS MEMORANDUM OF LAW ........ ............. 16

IV.  CONCLUSION ................................................. ............. 17

# TABLE OF CITED AUTHORITIES

*Page*

## Table of Federal Cases:

*Longo v. Suffolk County Police Dept. County of Suffolk,*
E.D.N.Y. 2006, 429 F.Supp.2d 553 ............................................ .......... 1, 12

*Shaw Group, Inc. v. Triplefine Int'l Corp.,* (2d. Cir. 2003) 322
F.3d 115, 121 ..................................................................... ................ 5

*Strategic Alliance Partners, LLC v. Dress Barn, Inc.* (SDNY
2005), 386 F.Supp.2d 312 ...................................................... ................ 7

## Table of State Cases

*CoE Associates LLC v. Regulus International,* 7 Misc.3d
1002(A), 801 N.Y.S.2d 232 ..................................................... .............. 10

*Goldstein v. CIBC World Markets Corp.,* 6 A.D. 3d 295 .......... .............. 10

*Graff v. Billet,* (Second Dept.1984), 101 A.D.2d 355, 475
N.Y.S.2d 122 (*seminal case*) ..................................................... ................ 7

*Joseph Sternberg, Inc. v. Walber 36th Street Associates,* (First
Dept.1993) 187 A.D.2d 225, 227 ................................................ .............. 10

*Midland Mortgage v. 220 Highland Blvd Realty,* (2nd Dept.
1989) 156 A.D. 2d. 351 ............................................................. .............. 11

*Orenstein v. Brum,* (1st Dept. 2006), 27 A.D. 3d. 352 .............. .............. 11

*Page*

**Table of Statutes**

FRCP Section 12(b)(6) .................................................................. 1, 9, 12, 18

## I. STATEMENT IN OPPOSITION TO MOTION TO DISMISS COMPLAINT

A. *Presumed Pled Facts/Plain Language of the Agreement: Contra to the premise of Defendant's Motion*

On a 12(b)(6) motion to dismiss the complaint "for failure to state a claim" all the allegations of the complaint and any documents annexed are accepted as true with all reasonable inferences drawn in favor of the nonmoving party. *E.g., see, Longo v. Suffolk County Police Dept. County of Suffolk*, E.D.N.Y. 2006, 429 F.Supp.2d 553.

Thus for the purposes of the motion at bar what must be accepted as true in accord with the FFI complaint and documents annexed, is that the parties signed a mortgage brokerage commission letter agreement on November 1, 2006. The agreement exclusive term ran for six months from November 1, 2006 to May 1, 2007. On November 29, 2006 **during the exclusive term of the commission agreement the defendant Citylights referred an eighty million dollar loan application and prospective rate lock agreement for plaintiff to negotiate as defendant's mortgage broker. The plaintiff did then painstakingly negotiate the loan and rate**

**lock agreement continuously over a fifteen-month period resulting in the closing of the loan with a rate lock agreement in place on February 29, 2008.** *See*, Complaint Paragraphs 7 through 10 and 19 also reproduced below; *see*, the Complaint annexed to the separately submitted **Appendix** as **Exhibit A.**

The commission letter agreement annexed to the Complaint and also annexed to the separate **Appendix** as **Exhibit B** states further that upon the occurrence of either one of two circumstances, plaintiff FFI was to be entitled to a commission of ½ percent:  (i) where plaintiff FFI procures an approved loan commitment for the defendant Coop; (ii) <u>where the defendant Coop submits to plaintiff FFI any other loan for assistance during the exclusive period.</u>

While the defendant's motion argues no entitlement under the commission agreement with respect to circumstance (i) where plaintiff was to *find* or "procure" the loan, defendant ignores completely circumstance (ii) where the loan is *submitted* to plaintiff during the exclusive term by

defendant and plaintiff then negotiates and brings the loan to close.

Defendant ignores the point because it has no bona fide defense.

That is, the commission letter agreement, annexed both to the

Complaint and to the Appendix as Exhibit B specifically states:

> *Unless extended by the parties in writing, the*
>
> *term of this agreement shall be for a period of six*
>
> *months from the date hereof (the "Term.")*
>
> <u>*During the Term, Borrower*</u> *will not engage any*
>
> *other broker, agent or consultant to assist it in*
>
> *procuring any loan(s) and* <u>*shall refrain from*</u>
>
> <u>*submitting any loan request or application*</u>
>
> <u>*except with the assistance of FFI pursuant to the*</u>
>
> <u>*terms hereof.*</u>

(Emphasis added.)

By plain meaning this agreement states that <u>during the exclusive term</u>

the defendant (Borrower) was prohibited from submitting any other loan

request or application unless it was with the *assistance* of the plaintiff.  As

the agreement further states, <u>any loan request submitted for the assistance of plaintiff during the exclusive period was *subject to* ("pursuant to") the other terms of the agreement.</u>  One of the other terms of the agreement is the compensation provision which states:

> *Should FFI produce a loan commitment*
>
> *substantially in accordance with Borrower's*
>
> *criteria as set forth in Exhibit A and acceptable to*
>
> *the Board in its sole discretion then Borrower*
>
> *shall pay FFI a placement fee equal to ½ per cent*
>
> *of the first mortgage amount.  Such fee shall be*
>
> *earned upon commitment and payable on the*
>
> *loan closing date.*

In *plain terms*, the parties agreed that plaintiff FFI would earn a commission of ½ percent if a loan was referred by defendant during the exclusive term and then brought to close.  This was the case here, including the agreement on a rate lock also negotiated by plaintiff.  Such are the pled facts (also quoted below) apropos the terms of the parties' agreement.  *I.e.*, the plaintiff FFI "produced" a loan *in accordance with Borrower's criteria*

Page 4 of 18

*and acceptable to the Board* entitling plaintiff to a commission of ½ per cent commission per the express terms of the parties' agreement. *See*, further detail, *infra*.

In interpreting a contract under New York law, words and phrases should be given their plain meaning and the contract should be construed so as to give full meaning and effect to all of its provisions. *See, Shaw Group, Inc. v. Triplefine Int'l Corp.*, (2d. Cir. 2003) 322 F.3d 115, 121.

*See, also*, the quoted pled complaint allegations below.

B. *"Procuring Cause" and "Produce a Loan": Legally Distinct Terms Evidencing Two Alternate Bases for a Commission*

In support of plaintiff's right to a commission is the distinction between the terms "procure" and "produce" as it bears on the compensation provision of the agreement. Both terms appear in the letter agreement. The term *procure* appears in the paragraph quoted below, while the term

"produce" appears in the compensation provision quoted above. The agreement states that plaintiff is entitled to its commission where it "produces a loan", not necessarily where it *procures* the lender.

The defendant argues, however, that the compensation provision of the commission agreement only covers the circumstance where plaintiff "procures" the lender in the first instance. Or as defendant phrases it in its Memorandum of Law, where plaintiff "solicited the lender". (*See*, Page 2 of the Defendant's Memorandum of Law.) The defendant relies for this proposition upon the following provision of the commission agreement:

> *First Service Financial Inc. (FFI) shall use its best efforts to procure a loan commitment for Borrower from one or more reputable institutional lenders in accordance with the loan criteria as established, from time to time, by Borrower. Borrower will cooperate with FFI and provide such reasonable information as FFI may require, all of which shall be true or correct to*

>*the best of its knowledge.  FFI is an affiliate of*
>
>*Cooper Square Realty, the managing agent for*
>
>*Citylights at Queens Landing Inc.*
>
>(Emphasis added.)

The defendant's ultimate argument is that plaintiff was not the "procuring cause" of the loan, therefore not entitled to a commission. *Procuring cause* is a generally recognized basis at law for a claim made for a brokerage commission.  The term is generally understood to mean that the broker was the *direct link*, as in finding a *buyer* for a *seller*, or finding a *lender* for a *borrower*.  E.g., see, *Strategic Alliance Partners, LLC v. Dress Barn, Inc.* (SDNY 2005), 386 F.Supp.2d 312.

<u>However</u>, the parties are free to alter the generally recognized brokerage obligations implied by law by written agreement.  *E.g., see, Graff v. Billet*, (Second Dept.1984), 101 A.D.2d 355, 475 N.Y.S.2d 122 (*seminal case.*)

<u>Here, the parties did alter the generally recognized brokerage</u> <u>obligations implied by law by a written *exclusive* agreement: The agreement</u>

of the parties added an additional and alterative basis for entitlement to a commission. That is, where a loan is referred during the exclusive term. This is in addition, and in the alternative, to the circumstance where plaintiff *procures* or *solicits* the lender in the first instance.

Accordingly, and consistently, the compensation provision of the letter agreement requires only that the plaintiff "produce" a loan. The provision does not require plaintiff to procure or solicit the lender. (*See*, the compensation provision quoted above.)

In short, the plaintiff FFI negotiated the terms of the Chatermac/Centerline loan and rate lock agreement at defendant's behest: and *but for* the efforts of plaintiff FFI over 15 months, the loan would not have closed. Plaintiff therefore "produced" the loan in the plain sense of the word notwithstanding that it did not "procure" or "solicit" the lender in the first instance. Plaintiff is therefore entitled under the parties written brokerage agreement to its commission of ½ percent.

In sum, the defendant's argument on the 12(b)(6) motion to dismiss is without merit: The argument disregards fifteen months of negotiation by plaintiff which culminated in the loan closing in February 2008. But whereas plaintiff did not *solicit* the lender in the first instance, defendant argues no entitlement to a commission: such argument violates the parties' agreement, offends equity, it disregards the pled allegations.

C. *Dismissal Demanded as to Quantum Meruit:*
*Defendant Can't Have Its Cake and Eat it Too*

Defendant's narrow contract argument omits to explain on what basis it was entitled to receive without compensation services willingly accepted over fifteen months, that is, the successful negotiation of the Chartermac/Centerline loan. Defendant argues that in its view, the agreement between the parties only covered loans procured or *solicited* by plaintiff FFI in the first instance. Therefore, defendant argues the plaintiff is not entitled to compensation under the parties' written agreement.

The defendant, in other words, *cannot have its cake and eat it too*. If defendant argues the commission agreement does not cover the successful services rendered by plaintiff, then by defendant's definition the services rendered are outside the scope of the commission agreement. Hence, the cases typified by *Goldstein v. CIBC World Markets Corp.*, 6 A.D. 3d 295 cited by defendant have no application here: *i.e.*, the defendant's cases are cited for the proposition that a quantum meruit cause of action does not lie where there is a written agreement covering the subject matter of the claim. But, if as defendant argues, the written agreement does not cover the services rendered, then the alternative theory of recovery on grounds of quantum meruit should stand.

See, *CoE Associates LLC v. Regulus International*, 7 Misc.3d 1002(A), 801 N.Y.S.2d 232; *Joseph Sternberg, Inc. v. Walber 36th Street Associates*, (First Dept.1993) 187 A.D.2d 225, 227: *quantum meruit* held proper where there is a bona fide dispute as to the existence of a contract or where the contract is said not to cover the dispute in issue.

### D. *Distinguishing Other Precedent Cited by Defendant*

Apropos the case of *Midland Mortgage v. 220 Highland Blvd Realty,*
(2nd Dept. 1989) 156 A.D. 2d. 351 also cited by defendant in its
Memorandum of Law, this case is inapposite. *Midland Mortgage* was a case
where the borrower declined the loan offered by the mortgage broker, hence
no commission was held due the broker. In the case at bar, the loan
submitted to plaintiff during the exclusive period was closed and thus
obviously accepted by defendant in February 2008 when the loan closed.

Likewise inapposite is the case cited by defendant, *Orenstein v. Brum,*
(1st Dept. 2006), 27 A.D. 3d. 352, where the court held "there was no
evidence that plaintiff generated the chain of circumstances that led to the
building's sale", hence denied the broker's claim for the commission. Here,
*but for* the plaintiff's continuous negotiation efforts as broker over 15
months, defendant would not have had a loan commitment.

## II. THE REPRODUCED RELEVANT PLED ALLEGATIONS OF THE
## COMPLAINT
## PARAGRAPHS 7 THROUGH 10 AND 19

As recited *supra*, a 12(b)(6) motion to dismiss the complaint "for failure to state a claim" requires that all the allegations of the complaint are accepted as true. *See*, supra, *Longo v. Suffolk County Police Dept. County of Suffolk*, E.D.N.Y. 2006, 429 F.Supp.2d 553.

Apropos the allegations of the complaint thus to be accepted as true stating a prima face case, *see*, complaint paragraphs seven through ten, and paragraph nineteen, reproduced below:

> 7.    *The brokerage letter agreement provided for plaintiff FFI to earn a mortgage brokerage commission of one half per cent of Board approved new financing upon the occurrence of either of two events: (i) where plaintiff FFI procures an approved loan commitment for the defendant Coop and also obtains a rate lock agreement (ii) where the defendant Coop refers to plaintiff FFI any other loan*

*application it intends to submit to any other lender during the*

*exclusive period of the brokerage agreement, where plaintiff*

*assists in negotiating the re-financing and the rate lock*

*agreement. The exclusive term of the brokerage letter*

*agreement ran for six months from the date of signing. That*

*is, between November 1, 2006 and May 1, 2007.*

8.    *On or about November 29, 2006, during the*

*exclusive term of the exclusive brokerage letter agreement,*

*the defendant Cooperative referred to the plaintiff FFI a*

*proposed loan it intended to submit to the lender Chartermac*

*later known as Centerline in the amount of $80,000,000.*

*(Eighty Million Dollars.) The defendant Coop identified*

*plaintiff FFI to Chartermac as its broker with authorization to*

*negotiate the terms of the refinancing per the exclusive*

*written letter agreement.*

9.    *From the date of Chartermac's introduction in*

*November 2006 continuously through February 29, 2008,*

Page 13 of 18

_when the loan closed with a rate lock agreement in place,_
_negotiated with plaintiff's assistance:_ the plaintiff worked
ceaselessly on the major issues and obstacles to the closing of
the Chartermac/Centerline loan, among which are the
following: (i) review, analysis and consultation, regarding the
terms and conditions of the Chartermac/Centerline proposed
financing (ii) analyze initial and final loan application (iii)
negotiate forward rate lock agreement (iv) analyze proposal
to convert building to residential condominium (v)
preparation of memoranda and studies regarding condo
conversion, obtaining end-loans for unit owners (vi)
solicitation of alternate lenders (vii) analysis of alternate
lender commitment offers (viii) marshalling building rent roll
for lender (ix) discuss/coordinate and obtain financial
statements for lender (x) discuss/coordinate and obtain
updated building operating statements for lender (xi) assist
in coordinating appraisal (xii) discuss/coordinate and obtain
engineering report for lender (xiii) discuss/coordinate and
obtain projected budget documents (xiv) discuss/ coordinate

Page 14 of 18

*and obtain proof of insurance for lender (xv) address the*

*Temporary Certificate of Occupancy/Certificate of Occupancy*

*issue (xvi) assist with mortgage satisfaction/mortgage*

*assignment issue (xvii) address proof of Local Law 11*

*compliance (xviii) address DEP violation.* (Emphasis in the

original.)

10.    *Apropos the foregoing plaintiff was required to*

*generate hundreds of e-mails, dozens of telephone calls to the*

*Coop Board, building management, building appraiser,*

*myriad others.  Plaintiff attended dozens of meetings by and*

*between the parties, created charts and studies for the Coop*

*Board to consider as detailed above: culminating in the close*

*of the loan with a rate lock agreement in place as aforesaid.*

19.    *Notwithstanding the foregoing, the defendant*

*has refused to pay the agreed commission due plaintiff under*

*written agreement in the amount of $400,000 representing ½*

*percent of the financed amount ($80,000,000) as agreed.  The*

*defendant claiming the loan was "not produced" by plaintiff*

*FFI, citing alleged but unrelated claims against the coop*

*defendant's former building management company Cooper*

*Square Realty Inc. as an offset defense to the commission due*

*the plaintiff FFI.*

## III.  SUPPORTING THIS MEMORANDUM OF LAW

*See, also,* the Declarations of Peter Gordon and Jared Tunnell of the plaintiff FFI re the commission agreement, affirming and detailing the substantive negotiations conducted in defendant Citylights' behalf by the plaintiff mortgage broker as pled in the Complaint.

## IV. CONCLUSION

The pled facts and the evidence show that the $80,000,000 Chartermac/Centerline loan and rate lock agreement was "submitted" to plaintiff FFI for *assistance* during the exclusive term of the brokerage agreement between the parties. The loan was accepted by the defendant after exhaustive and continuous negotiation by plaintiff FFI over a 15 month period. In accord with the parties commission agreement the loan is finally shown to meet *the defendant's criteria* and *acceptable to the defendant's Board*, evidenced in the voluntary closing of the loan in February 2008.

The plaintiff is therefore entitled to the commission as stated in the commission letter agreement of ½ percent as per the facts pled in the Complaint.

The motion to dismiss the Complaint for *failure to state a claim upon which relief can be granted* pursuant to FRCP 12(b)(6) is without merit and should be denied.

Dated:  June 23, 2008

Respectfully submitted,

CASCONE, COLE & COLLYER
Attorneys for Plaintiff First Service
    Financial Inc.
By:  Michael S. Cole, Esq. (MC 0636)
711 Third Avenue – 15th Floor
New York, NY  10017
Tel:  (212) 599-4747