UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

FIRST SERVICE FINANCIAL INC,

                Plaintiff,

             -against-                      Case No. 08-cv-03312
                                                   (BSJ) (FM)

THE CITY LIGHTS AT QUEENS LANDING INC.,

                Defendant.

---

**DECLARATION OF PETER GORDON IN OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS COMPLAINT
PURSUANT TO FRCP RULE 12(b)(6)**

Pursuant to 28 U.S.C. Section 1746, Peter J. Gordon hereby declares under the penalty of perjury that the following is true and correct to the best of his knowledge, information and belief:

1.      I am the President of the plaintiff First Service Financial Inc., hereinafter "FFI" and I am fully familiar with the facts and circumstances as stated herein.

2. FFI entered into an exclusive mortgage brokerage commission agreement with the defendant cooperative Citylights on or about November 1, 2006. The exclusive term ran for six months from the date of the agreement, that is, from November 1, 2006 to May 1, 2007. The commission agreement is annexed to the separately submitted Appendix as **Exhibit B** and is also an exhibit to the Complaint. (*See, Complaint*, Appendix **Exhibit A**.)

3. The defendant Citylights was originally referred to FFI by its then managing agent, Cooper Square Inc., which is an affiliate of FFI. Cooper Square Inc. is therefore referenced in the commission agreement as such.

4. Under the express terms of the commission agreement, (App. Ex. B), FFI is entitled to its commission in the event FFI "produced a loan substantially in accordance with the Borrower's criteria and acceptable to Citylight's Cooperative Board in an amount up to $90,000,000 with a forward rate lock agreement". In such event, FFI was entitled to a

commission of ½ percent of the financed amount. This is exactly what FFI did as detailed below, and hence the plaintiff FFI is entitled to the ½ percent commission of the financed amount per the written agreement of the parties and the allegations of the complaint.

5. The lender in this case was *Chartermac* later called *Centerline*. The amount financed was $80,000,000 (Eighty Million Dollars). The interest rate per the forward rate lock agreement was 6.135 percent. The term of the commitment is 15 years, with a 30-year amortization. The commitment and the forward rate lock agreement were negotiated by FFI, primarily by myself and Jared Tunnell of FFI over a fifteen-month period beginning in November 2006. Following negotiation by FFI, the defendant Citylights and its Board accepted the Chartermac/Centerline loan, having closed on it without objection on February 29, 2008. *But for* the efforts of plaintiff FFI over the 15 months, the loan would not have closed. The plaintiff is therefore entitled to a commission of $400,000 or ½ percent of the financed amount of $80,000,000 under the parties written agreement. *See*, the Loan Application and Loan Commitment Agreement, both

addressed by the lender and sent care of FFI as broker on the transaction. *See*, Appendix **Exhibits C, D and E.**

6. Per the express written terms of the commission agreement, FFI earns its commission of ½ percent of the financed amount in one of two ways: where FFI procures the lender <u>or</u> where a loan is *submitted* to FFI during the exclusive term for FFI's "assistance." The intent of this latter provision being that FFI earns a commission where a loan is referred by the Cooperative during the exclusive term, and where FFI negotiates the loan to close. This being exactly what occurred as aforementioned.

7. With respect to the written commission agreement, the defendant categorizes it in its Memorandum of Law as a "standard loan brokerage contract," (Defendant's Memo of Law at page 1) it is standard only with regard to it being an exclusive brokerage agreement, which typically creates a binding obligation for a commission during the exclusive term. The commission agreement, however, is not *standard* in the sense that it was fully negotiated by the parties. The Cooperative negotiated the

commission agreement with FFI through the Cooperative's counsel Perry L. Mintz, Esq. and Citylights' Board President Edward Sadowsky. There were several drafts exchanged before Citylights agreed to put the commission agreement on its stationery, but only after first shortening the exclusive term from twelve to six months: This change was written in by hand, I believe, by the Cooperative's President Edward Sadowsky.

8. Contained in the Appendix separately submitted as part of FFI's opposition to the motion to dismiss, is a sample of the hundred's of emails exchanged over the fifteen month loan negotiation period. The emails are between FFI and the defendant Cooperative, also the Lender, and various other related parties. The sample emails together show a snapshot of the serious matters and obstacles handled by FFI as mortgage broker, facilitating the ultimate loan close over the 15-month negotiation period. So as to better understand the email exhibits, the Court should be cognizant of the following persons:

**George Haase: Director of the Lender, Chartermac/Centerline**

      **Edward Sadowsky:**  **Citylights Cooperative Board President**

**Perry L. Mintz, Esq.:**  **Attorney for defendant Citylights**

**Jared Tunnell:**  **Product Manager for plaintiff FFI**

9.    One of the major issues handled and negotiated by FFI, also a primary aspect of the "borrower's criteria," was obtaining for Citylights a *Forward Rate Lock Agreement* from the Lender. A *Forward Rate Lock Agreement* is one where the loan interest rate is locked in at the time the loan application is submitted to the lender with the loan application fee. This guaranties the rate at the time of close, which normally occurs several months later. Ordinarily, a borrower's application deposit is used by the lender to secure the forward rate lock agreement. However, in this case, FFI was confronted by the problem that the prior Citylights HUD mortgage prohibited the use of the deposit to secure the rate lock. So FFI negotiated the use of the lender's own funds to secure the rate lock. Ultimately, the rate lock agreement was made, locking the lender to a rate of 6.135%. *See*, a sampling of the relevant email exchanges regarding this issue in **Exhibit F** of the Appendix.

*See*, also my Memorandum sent to the Citylights Board President Edward Sadowsky dated October 9, 2007 attached to the Appendix as **Exhibit G.**

10. Further showing FFI as the lead or key negotiator of the Chartermac/Centerline loan are the emails in Appendix **Exhibit H**. Additionally and equally indicative of FFI's major role and importance in the negotiation process is the fact that the Cooperative's attorney Perry L. Mintz Esq., simultaneously and routinely copied FFI on the advice he gave his client regarding the loan contract, taking FFI into his confidence notwithstanding the attorney-client privilege. *See*, Appendix **Exhibit I.**

11. Finally it should be noted that on *Page H-2* of the Commitment sent by Chartermac/Centerline above referenced the Borrower, defendant Citylights, expressly represents to the Lender that FFI was the recognized mortgage broker on the transaction. *See*, **Exhibit D**, page H-2 of the Appendix.

WHEREFORE, upon the foregoing facts and also upon the Declaration of Jared Tunnell of FFI and the Plaintiff's Memorandum of Law and the Separate Appendix submitted herewith, the defendant's motion to dismiss the Complaint should be denied.

Dated: June 26, 2008

*Peter J. Gordon*